**CHESTER COMMUNITY CHARTER SCHOOL, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION, Secretary of Education Gerald L. Zahorchak, Chester–Upland School District, Chester Upland School District Education Empowerment Board, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2009.

Decided June 3, 2010.

BEFORE: LEAVITT, Judge, and
KELLEY, Senior Judge, and
FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Chester Community Charter School (Chester School) has filed an action in this Court's original jurisdiction, seeking a writ of mandamus to compel the Secretary of Education to withhold state subsidies from the Chester–Upland School District (School District) because it has failed to fund Chester School in the amounts required by law. Chester School also seeks a writ of prohibition, a declaratory judgment and a permanent injunction, to stop the Department's administrative hearing, scheduled to consider, *inter alia,* whether state subsidies should be withheld from the School District and disbursed to Chester School. In response, the Department of Education, the School District and the Chester–Upland School District Education Empowerment Board (Empowerment Board) have filed preliminary objections in the form of a demurrer. Concluding that the Secretary has failed to follow the statutory procedure established for the situation where a charter school documents that it has not been properly funded by a school district, we overrule the preliminary objections in part and sustain them in part.

Joseph T. Doyle, Media, for petitioner.

Joseph M. Miller, Asst. Chief Counsel, Harrisburg, for respondent, Department of Education.

Allison S. Petersen, Huntingdon Valley, for respondents, Chester–Upland School District and Education Empowerment Board.

## Background

The Secretary of Education serves as receiver for the School District.[1] To manage the operations of the School District, the Secretary has appointed a three-member Empowerment Board that serves at the Secretary's pleasure. One of the Empowerment Board's responsibilities is to ensure that the School District makes monthly payments to charter schools within the district as required by Section 1725–

---

1. The background comes from the amended petition for review filed by Chester School.

The Secretary was appointed receiver by this Court in October of 2006.

A(a)(5) of the Charter School Law.[2] It states:

Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year. A student enrolled in a charter school shall be included in the average daily membership of the student's district of residence for the purpose of providing basic education funding payments and special education funding pursuant to Article XXV. *If a school district fails to make a payment to a charter school as prescribed in this clause,* the secretary shall deduct the estimated amount, as documented by the charter school, from any and all State payments made to the district after receipt of documentation from the charter school.

24 P.S. § 17–1725–A(a)(5) (emphasis added). Chester School asserts that the School District has failed to remit the payments required by this statutory provision.

Chester School's pleading explains that in May 2002, the Auditor General discovered in the course of an audit that the School District had deliberately miscalculated the average daily payment owed for each student enrolled in another charter school in the School District, Village Charter School.[3] Specifically, the Auditor General found that the School District had incorrectly calculated the amount owed for special education students enrolled in Village Charter School. The School District did so because it believed it could not afford to pay the amount required by the Department of Education's formula for funding a charter school's education of special education students.

On the basis of the Auditor General's report, Village Charter School requested the Department to withhold the state subsidies from the School District in accordance with Section 1725–A(a)(5). By letter of February 2, 2005, the Department responded that it agreed with the Auditor General's findings and concluded that the School District owed the Village Charter School more than $300,000.[4] The Department urged the School District and Village Charter School to "resolve this matter amicably in the coming days." Amended Petition for Review, Exhibit 4, at 4.

**2.** Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1701–A–17–1751–A. The Charter School Law amended the Public School Code of 1949, Act of March 10, 1949, P.L. 30, 24 P.S. §§ 1–101–27–2702.

**3.** The school district calculates the funding for each charter school in its district. It does so by calculating the per-student expense of educating a student in a district school. This per-student expense is called the "selected expenditure" and reported on the PDE–363 form, "Funding for Charter Schools, Calculation of Selected Expenditures Per Average Daily Membership." The school district files the PDE–363 with the Department annually, but it can be revised throughout the school year. Selected expenditures are separated between special education students and regular education students.

The school district arrives at the "selected expenditures" by dividing the school district's budgeted total expenditures by the average daily membership (ADM) of the school district for the prior school year. The school district multiplies the selected expenditure amount by the charter school's ADM. From that number, it subtracts certain excluded expenses, such as the cost of adult education programs, to calculate the total annual payment owed to the charter school. The school district must pay this total to the charter school in 12 equal monthly installments.

**4.** The Department's letter noted that the School District had improperly calculated funding rates because of discrepancies in: the average daily membership of School District residents attending Village Charter School; the special education expenditure per average daily membership rate; and the inclusion of regular (non-special) education expenditures in the special education expenditures.

Because the Auditor General's findings applied with equal force to Chester School, it sought a correction. In April 2007, Chester School notified the Department of Education that the School District had failed to make monthly payments as required by Section 1725–A(a)(5) because the School District had used the same daily rate for special education students that was found to be incorrect by the Auditor General. It also documented the estimated amount that was owed by the School District. Chester School demonstrated that it was owed $4.7 million for the period from September 1998 to June 2006. In July 2007, the Department responded, directing Chester School to present its claim to the School District.

Between April and August 2007, Chester School sent a series of invoices to the School District. Chester School invoiced the School District $4,753,721.82 for the period from September 1998 to June 2006; $2,608,078.90 for the 2006–2007 school year; and $390,879.50 for July to September 2007.

In September 2007, acknowledging its underpayment for school year 2006–2007, the School District notified Chester School that it would pay $739,486.99, in twelve monthly payments of $61,623.91. After making two monthly payments, the School District paid the balance in a lump sum payment of $616,239.17. However, it refused to pay Chester School the remaining $1,868,591.91 claimed to be owed for the 2006–2007 school year. The School District did not make any payment on Chester School's claim for the periods covering 1998–2006 or July to September 2007. At that point, Chester School requested the Secretary to withhold the state subsidies from the School District in the amount Chester School had documented in its April 2007 submission to the Department

and to direct their disbursement to Chester School.

With respect to Chester School's claim for the $4,753,721.82, covering the period from September 1998 to June 2006, the Department did not respond. Chester School repeated its demand, in writing, six times between April 2007 and May 2008.

With respect to the claim for $1,868,591.91, covering the 2006–2007 school year, the Department directed Chester School to provide a reconciliation report. Chester School's pleading explains that it did not do a reconciliation for good reasons: an online reconciliation would be a futile exercise because the system would automatically use the School District's incorrect daily funding rate for special education students and, in any case, the online submission system for the 2006–2007 school year had already been shut down when the Department made its request.

Finally, with respect to the claim for $390,879.50, covering the period from July through September 2007, the Department directed Chester School to submit an invoice, using the Department's procedures that were posted on its website.

In August 2008, on its own initiative, the Department appointed a hearing officer to conduct an administrative hearing on Chester School's claims against the School District. Chester School then filed a petition for review with this Court, challenging the Department's authority to hold a hearing without first withholding the funds documented by Chester School. The Department and the School District each filed a demurrer to the petition for review. However, before the objections were briefed, Chester School filed an amended petition for review, to which the Department and the School District filed new preliminary objections. Chester School filed preliminary objections to the School District's preliminary objections. This

Court sustained Chester School's preliminary objections and directed the School District to respond to the amended petition by September 10, 2009.[5] It did so with amended preliminary objections.

At the root of this controversy is the scope and meaning of Section 1725–A(a)(5) of the Charter School Law. Chester School's amended petition for review raises four counts. Count I seeks a writ of mandamus, asserting that the Secretary has failed to fulfill his ministerial and mandatory duty to withhold subsidies from the School Board upon receipt of Chester School's documentation of the estimated underpayment. In Count II, Chester School seeks to stop the Department's scheduled hearing because it does not conform to the statutory procedure. A hearing, Chester School asserts, takes place after the withholding of subsidies and only upon request of a school district; the Department lacks authority to schedule a hearing *sua sponte.* In Count III, Chester School requests a declaratory judgment that the Department's refusal to withhold the subsidies violates Section 1725–A(a)(5). In Count IV, Chester School seeks a permanent injunction, asserting, *inter alia,* that it cannot receive a fair or unbiased hearing from the Secretary, who has appointed the members of the Empowerment Board and is responsible for the Board's actions, including its refusal to fund Chester School in the correct amount.

The School District and the Department seek the dismissal of each count of the amended petition for review. They assert that the amended petition for review fails to state a cause of action in any respect.

A demurrer tests the legal sufficiency of the complaint. *Insurance Adjustment Bureau, Inc. v. Allstate Insurance Company,* 588 Pa. 470, 480, 905 A.2d 462, 468 (2006). A demurrer admits every well-pleaded material fact set forth in the complaint as well as all inferences reasonably deducible. *Chichester School District v. Chichester Education Association,* 750 A.2d 400, 402 n. 8 (Pa.Cmwlth.2000). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible, and any doubt should be resolved in favor of overruling the demurrer. *Id.*

The preliminary objections have been briefed and argued. They are ready for disposition.

## Motion to Strike

As an initial matter, we consider Chester School's motion to strike the Department's reply brief, which Chester School contends was not authorized. Specifically, Chester School notes that the Court's order establishing the briefing schedule did not mention reply briefs. Pennsylvania Rule of Civil Procedure 1028, which governs the filing of preliminary objections, does not provide for a reply brief. Finally, Chester School contends that the Pennsylvania Rules of Appellate Procedure, which do provide for reply briefs, are not applicable to a matter within our original jurisdiction.

Chester School has failed to recognize that the Pennsylvania Rules of Appellate Procedure function as the Court's "local rules" for matters within our original jurisdiction. Rule 106 provides that the appellate rules are applicable to matters in an appellate court, including original jurisdic-

---

5. The Court's August 14, 2009, order specifically warned the School District that it is procedurally improper to raise a statute of limitations defense by preliminary objections, and that such a defense must be raised as an affirmative defense in Respondents' responsive pleading under the heading "New Matter." Pa. R.C.P. No. 1030(a).

tion matters. PA. R.A.P. 106.[6] This applies to the briefing. *See* PA. APPELLATE PRACTICE § 106:13 (briefs filed in an original jurisdiction matter must comply with the provision of Chapter 21 of the appellate rules insofar as possible). Rule 2113(a) expressly provides for the filing of reply briefs, providing, in relevant part, that

> the appellant may file a brief in reply to matters raised by appellee's brief and not previously addressed in appellant's brief. If the appellee has cross appealed, the appellee may file a similarly limited reply brief.

PA. R.A.P. 2113(a). Where, as here, the Court's scheduling order was silent on reply briefs, Rule 2113(a), which authorizes reply briefs, governs. Accordingly, Chester School's motion to strike must be denied.[7]

### Count I—Mandamus

Chester School contends that since 1998, the School District has underpaid it by more than $7 million. Chester School further contends that under Section 1725–A(a)(5) of the Charter School Law, the Secretary has a ministerial duty to withhold subsidies from the School District immediately upon receipt of Chester School's documentation of an underpayment. It bases this claim on the language in Section 1725–A(a)(5), which states that "the secretary *shall deduct the estimated amount*, as documented by the charter school...." 24 P.S. § 17–1725–A(a)(5) (emphasis added). Finally, Chester School argues that the Secretary had no authority

to delay the withholding of subsidies by first conducting a hearing. Indeed, Chester School contends that if the School District objects to the withheld amount, it may request a hearing. However, the Secretary had no authority to schedule a hearing *sua sponte.*

 A writ of mandamus compels the performance of a ministerial and mandatory duty. *Chadwick v. Dauphin County Office of the Coroner,* 905 A.2d 600, 603 (Pa.Cmwlth.2006). To prevail in mandamus, the plaintiff must demonstrate: a clear legal right for performance of an act by the government; a corresponding duty in the government to perform the ministerial act and mandatory duty; and the absence of any other appropriate or adequate remedy. *Id.* A mandatory duty is "one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Filippi v. Kwitowski,* 880 A.2d 711, 713 (Pa.Cmwlth. 2005). Where the public official has discretion in *how* to perform the act, mandamus may compel the exercise of discretion, but it may not interfere with the manner in which the discretion is exercised. *Chadwick,* 905 A.2d at 604.

The Department challenges Count I, arguing that its duty to withhold subsidies from a school district is discretionary, not mandatory. Further, it contends that it may withhold subsidies only where a school district has not made *any payment* to a charter school. Here, the School District made twelve equal monthly payments

---

6. Pennsylvania Rule of Appellate Procedure 106 provides:

> Unless otherwise prescribed by these rules the practice and procedure in matters brought before an appellate court within its original jurisdiction shall be in accordance with the appropriate general rules applicable to practice and procedure in the courts

of common pleas, so far as they may be applied.

PA. R.A.P. 106.

7. Because the Department was permitted as of right to file a reply brief, the Department's retroactive application for leave to submit a reply brief is moot.

to Chester School, albeit, perhaps, in the incorrect amount. The Department argues that Chester School's claim arises from Sections 1725–A(a)(2)(3),[8] which establishes how the daily funding rate is to be calculated; its claim does not arise from Section 1725–A(a)(5). The Department further contends that it has no authority to intervene in disputes arising from Section 1725–A(a)(2)–(3), let alone a duty to withhold disputed amounts from state subsidies.

The Department directs the Court to our holding in *Boyertown Area School District v. Pennsylvania Department of Education*, 797 A.2d 421 (Pa.Cmwlth.2002). In that case, this Court held that the Secretary's decision to withhold subsidies from a school district under authority of Section 1725–A(a)(5) was an adjudication because it was a final order that affected the school district's property rights. Accordingly, we held that the Department must provide a school district with notice and an opportunity to be heard before withholding subsidies from that district. In accordance with *Boyertown's* holding, the Department has established the practice of scheduling an

administrative proceeding whenever it receives a request from a charter school to withhold subsidies from a school district. The adjudication produced at the conclusion of that hearing can then be reviewed by this Court in its appellate jurisdiction. This procedure is the one the Department followed here.

Chester School counters that *Boyertown* is no longer relevant. In 2002, the General Assembly amended Section 1725–A(a)(5), in direct response to *Boyertown*, to eliminate the pre-withholding hearing.[9] Chester School contends that amended Section 1725–A(a)(5) places the burden on a school district by requiring the Secretary to withhold the estimated amounts documented by a charter school. If the school district objects to the amount withheld, it can challenge the accuracy of the charter school's estimate up to thirty days *after* the Secretary has withheld the funds. Chester School argues that this interpretation of the 2002 amendment has been acknowledged by this Court, and even the Secretary, in at least two cases.

In *Village Charter School v. Chester Upland School District*, 813 A.2d 20, 26 (Pa.

---

8. Sections 1725–A of the Charter School Law provides, in relevant part, as follows:

(a) Funding for a charter school shall be provided in the following manner:

\* \* \*

(2) For non-special education students, the charter school shall receive for each student enrolled no less than the budgeted total expenditure per average daily membership of the prior school year, as defined in section 2501(20), minus the budgeted expenditures of the district of residence for nonpublic school programs; adult education programs; community/junior college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses, including debt service and fund transfers as provided in the Manual of Accounting and Related Finan-

cial Procedures for Pennsylvania School Systems established by the department. This amount shall be paid by the district of residence of each student.

(3) For special education students, the charter school shall receive for each student enrolled the same funding as for each non-special education student as provided in clause (2), plus an additional amount determined by dividing the district of residence's total special education expenditure by the product of multiplying the combined percentage of section 2509.5(k) times the district of residence's total average daily membership for the prior school year. This amount shall be paid by the district of residence of each student.

24 P.S. § 17–1725–A(a)(2)–(3).

9. *See* Section 13, Act of June 29, 2002, P.L. 524, No. 88, effective July 1, 2002 (Act 2002–88).

Cmwlth.2002), the charter school demanded a subsidy redirection; the Secretary responded that the payment could not be disbursed to Village Charter School until the school district received its next monthly state subsidy payment three weeks later. Village Charter School demanded *immediate* deduction from the school district's state education subsidies and sought relief from this Court. We dismissed Village Charter School's petition for review for the reason that the statutory remedy in Section 1725–A(a)(6), 24 P.S. § 17–1725–A(a)(6), had not been followed.[10] In reaching this conclusion, this Court noted that the Charter School Law had been amended to provide for a post-withholding hearing, rather than a pre-withholding hearing.

Chester School also directs the Court to *Slippery Rock Area School District v. Pennsylvania Cyber Charter School,* 975 A.2d 1221 (Pa.Cmwlth.2009). In that case, the school district did not include four-year olds in monthly payments to the charter school, resulting in underpayments. The Secretary withheld subsidies from the school district and paid them to the charter school because the school district had "failed to pay the charter school for the full amount required under the formula." *Id.* at 1222.

Chester School contends that *Slippery Rock* refutes the Department's position here in two ways. First, the Secretary withheld payment from the subsidies because the formula used by the school district to calculate the monthly payment to the charter school was wrong. The Secretary did not claim, as he does here, that formula disputes were governed by Section 1725–A(a)(2)–(3) as opposed to Section 1725–A(a)(5). Second, the Secretary, with the approval of the Court, followed the procedure Chester School seeks to have

employed in its case, *i.e.,* a withholding of subsidy followed by a hearing, if desired by the School District.

■ The language of the statute and our case law precedent support Chester School's construction of Section 1725–A(a)(5). It states that where a school district fails to make a required payment to a charter school

the secretary shall deduct the *estimated* amount, as documented by the charter school, from any and all state payments made to the district after receipt of documentation from the charter school.

24 P.S. § 17–1725–A(a)(5) (emphasis added). We agree with Chester School that the 2002 amendment effected a sea change in the procedures for funding charter schools and litigating disputes about the appropriate monthly payment.

Prior to 2002, Section 1725–A(a)(5) was worded the same as it is today with one exception: the word "estimated" did not appear in the phrase "the secretary shall deduct the amount...." 24 P.S. § 17–1725–A(a)(5). In *Boyertown,* the Department argued that withholding a school district's subsidy was not an adjudication because it was not final until a hearing was conducted in accordance with Section 1725–A(a)(6). This Court held, however, that withholding subsidies affected property rights and was, therefore, an adjudication. By adding the word "estimated," the legislature has signaled that the withholding of subsidies is not an adjudication, as found in *Boyertown,* because the actual amount withheld is not final until the school district has had the hearing provided in Section 1726–A(a)(6).

There is no air in Section 1725–A(a)(5). The Secretary's responsibility to withhold subsidies is mandatory and ministerial.

**10.** Section 1725–A(a)(6) is discussed at length, *infra.*

There is no discretion to exercise because the estimated amount to be withheld is determined by the charter school's documentation.

This does not leave the school district without a remedy. Section 1725–A(a)(6) states:

> Within thirty (30) days after the secretary makes the deduction described in clause (5), *a school district may notify the secretary that the deduction made from State payments to the district under this subsection is inaccurate. The secretary shall provide the school district with an opportunity to be heard concerning* whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and *whether the amounts deducted from the school district were accurate.*

24 P.S. § 17–1725–A(a)(6) (emphasis added). If the school district prevails in its challenge to the amount deducted from its subsidy, the school district can effect a reimbursement simply by reducing the charter school's next monthly payment.

The School District contends, however, that Section 1725–A(a)(6) has no application here because that provision covers disputes over whether a student was actually enrolled in the charter school during the time period in question and whether the student was a resident of the school district whose subsidy was withheld. It does not cover whether the calculated daily payment is correct. This construction is at odds with the language of the provision. Whether a student resides in the district and is enrolled in the charter school is one issue. However, that "whether clause" is followed by a second "whether" clause, *i.e.,* "whether the amounts deducted from the school district were accurate." 24 P.S. § 17–1725–A(a)(6). In short, the Section 1725–A(a)(6) hearing is intended to cover the accuracy of the Secretary's deduction of a subsidy, for any reason, where the school district fails to make the prescribed monthly payment to a charter school in the correct amount.

The 2002 amendments clarify the intention of the legislature to place the burden on the school district to fund charter schools in the correct amount. It imposed a mandatory duty upon the Secretary to withhold subsidies from the school district upon receipt of the charter school's estimation of the amount of the underpayment. To limit Section 1725–A(a)(5) to the situation where the school district has failed to make *any* payment to a charter school would effectively nullify the protections of Section 1725–A(a)(5). To avoid a withholding of subsidies, a school district could pay $1 per student for each student claimed by the charter school to reside in the school district. The procedures in Section 1725–A were designed to avoid such a result.

We overrule the preliminary objections to Count I. The Department has a mandatory, non-discretionary duty to withhold subsidies to a school district based upon the estimated amount documented by the charter school. It is then incumbent upon the school district to request a hearing if it does not agree with the amount of the Department's withholding. A prompt hearing could be conducted before any funds actually change hands. It is clear, however, that as between the school district and the charter school, the legislature has decided that more harm will befall a charter school that is not paid timely and accurately than upon a school district that may experience a delay in the receipt of the state subsidy to which it is entitled.

### Count II—Writ of Prohibition

Chester School seeks a writ of prohibition to prevent the Secretary from con-

ducting his hearing on whether Chester School is entitled to the additional payments it seeks from the School District. Chester School contends that the Secretary has no authority to initiate administrative proceedings or to hold a hearing *before* withholding subsidies. In reversing the order established in the statute, the Secretary has shifted the burden of proof, improperly, to Chester School. The Charter School Law, however, contemplates that the school district has the burden to challenge the estimated withheld amount only after the withholding of subsidies is made.

 A writ of prohibition restrains an inferior court or an administrative agency from exceeding its lawful jurisdiction or powers. Where the administrative agency or court has subject matter jurisdiction but exceeds its authority in adjudicating the case, it will be said to have committed an "abuse of jurisdiction." *Glen Mills Schools v. Court of Common Pleas of Philadelphia County,* 513 Pa. 310, 315, 520 A.2d 1379, 1381 (1987). For a writ of prohibition to issue (1) there must be no adequate remedy at law and (2) the requested relief must be necessary "to secure order and regularity in judicial proceedings." *Id.* The writ is not appropriate where relief may be sought through ordinary avenues of judicial review.

 The Department argues that Chester School is not entitled to a writ of prohibition for the reason that its hearing arises from Section 1725–A(a)(2)–(3), not Section 1725–A(a)(5). This argument was rejected in our disposition of Count I. Accordingly, Count II states a claim insofar as it is based upon the proposition that a hearing on the withholding of subsidies takes place after the subsidies are withheld.

However, Chester School seeks a writ of prohibition for another reason. It claims that the Department cannot fairly and impartially conduct a hearing. The Secretary is the receiver of the School District, and he appointed all of the members of the Empowerment Board, who serve at the pleasure of the Secretary. This conflict of interest makes it necessary to remove even a post-withholding hearing from the Department, according to Chester School. The Department responds that bias cannot be inferred from the fact that the Secretary or his agent will adjudicate the proceeding.

The School District contends that because it has no authority over the Department or hearing officer in this matter, a writ of prohibition cannot be properly sought against it. Chester School responds that Count II implicates the conduct of the School District as well as that of the Department because of alleged bias that will taint any hearing, whether held post-deduction or pre-deduction. Accordingly, Chester School seeks to prohibit the School District from demanding a post-deduction hearing and to prohibit the Department from acting on such a demand.

The parties have agreed to stay the administrative hearing pending this Court's decision on the merits. Should this Court issue a writ of mandamus to the Secretary to withhold subsidies from the School District under Section 1725–A(a)(5), the School District may request a hearing pursuant to Section 1725–A(a)(6). At that point, the question of whether the Department has a conflict of interest that prevents it from conducting a post-withholding hearing without bias becomes an active question. The Department has suggested in its brief that there are ways to address the conflict of interest and apparent bias, such as recusal of the Secretary and other employees. The Department may be correct, but we are bound by the facts as pled. We cannot say that Chester School

has failed to plead a conflict of interest or bias. The Department can, and should, provide more facts in its answer about ways in which the Secretary can address bias.

We sustain the School District's demurrer. It cannot be restrained from asking for a hearing. Indeed, the Charter School Law guarantees it a hearing where it contests any amount withheld from its state subsidies.

### Count III—Declaratory Judgment

Chester School seeks a declaration from this Court that the Department and School District have failed to comply with their duties as established in the Charter School Law. Chester School requests the Court to declare that the Charter School Law requires the Secretary to withhold subsidies upon receipt of documentation from the charter school and hold a hearing only when requested by the school district. To state a claim for declaratory judgment, a party must allege facts that establish a direct, immediate and substantial injury, and it must demonstrate the existence of an actual controversy related to the invasion or threatened invasion of one's legal rights. *Bowen v. Mount Joy Township*, 165 Pa.Cmwlth. 101, 644 A.2d 818, 821 (1994).

The Department asserts that it is a neutral party in the dispute between the School District and Chester School. Stated otherwise, the controversy does not involve the Department. The Department further asserts that Chester School has not shown that it has suffered a direct, immediate or substantial injury as a result of the Department's action. Chester School responds that it has been injured by the Secretary's failure to withhold the funds as required by statute. Therefore, it argues that there is an actual and ripe controversy between it and the Department.

An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties. *Gulnac v. South Butler County School District*, 526 Pa. 483, 487, 587 A.2d 699, 701 (1991). Under the ripeness doctrine, a party must demonstrate that the controversy between the parties "has crystallized to the point at which a court can identify a relatively discrete dispute." *Gardner v. Department of Environmental Resources*, 658 A.2d 440, 444 (Pa.Cmwlth.1995) (quoting DAVIS & PIERCE, 2 ADMINISTRATIVE LAW TREATISE § 15.12 (3d ed. 1995)). The disputes between the parties in this matter are sufficiently discrete that this Court can rule on their merits: whether the Secretary has a mandatory duty to withhold subsidies from the School District; whether the School District has a right to a pre-withholding hearing to challenge Chester School's invoices; and whether the Secretary has the authority to initiate administrative proceedings, *sua sponte*, before withholding the funds.

We agree with Chester School that it has alleged facts establishing a direct, immediate and substantial injury. Further, an actual and ripe controversy exists between Chester School, the School District, and the Department. Accordingly, we overrule the preliminary objections to Count III.

### Count IV—Permanent Injunction

Chester School requests this Court to enjoin, permanently, the administrative hearing scheduled by the Department to address Chester School's entitlement to the School District's subsidies. Chester School contends that it will suffer irreparable harm if it is forced to participate in this administrative proceeding because the De-

partment is inherently biased against Chester School. It claims that injunctive relief is necessary to prevent the substantial injury that Chester School will suffer if its funding is not restored and if the Department and School District are not compelled to fulfill their obligations under the Charter School Law. Chester School asserts that it has a clear right to this relief under the Charter School Law.

■ To state a claim for injunctive relief, a party must establish that: (1) its right to relief is necessary to prevent immediate and irreparable harm which cannot be compensated for in damages; (2) that greater injury will occur from refusing the injunction than from granting it; (3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; (4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (5) that petitioner's right to relief is clear. *Moscatiello v. Whitehall Borough,* 848 A.2d 1071, 1074 (Pa.Cmwlth.2004).

■ The Department and the School District assert that Chester School will not suffer immediate and irreparable harm but only monetary loss, which is compensable in a legal proceeding. The Department points out that Chester School can always appeal its administrative adjudication after the hearing. It contends that this Court should require Chester School to exhaust the administrative process already underway.

Chester School responds that if it is required to undergo a hearing before a biased tribunal, it will suffer injury which cannot be compensated in damages. It alleges that the Department has commingled its supervisory and adjudicatory function as further evidence that it cannot obtain a fair hearing. Finally, Chester School states that if an injunction is granted preventing the Department's unilateral initiation of an administrative proceeding, then Chester School will be in precisely the same position as it would have been if the Charter School Law had been followed initially.

As explained in our discussion of Count II, it does not necessarily follow that Chester School cannot receive a fair hearing because the Secretary appointed the School District's Empowerment Board. Should the School District request a post-withholding hearing pursuant to Section 1725–A(a)(6), the question of whether the Secretary has a conflict of interest that prevents him from conducting a post-withholding hearing will need to be addressed. We cannot say, at this point, that the facts, as pled, do not state a claim because Chester School has raised a valid concern about the Secretary's ability to be impartial in this matter in light of his appointment of the Empowerment Board. The Department may be correct that there are ways to address the conflict of interest and apparent bias, such as recusal of the Secretary and other employees; however, the Department should explain these methods of resolving any conflict of interest, such as the Secretary's recusal, in its answer.

Accordingly, we overrule the preliminary objections to Count IV.

**Lack of Subject Matter Jurisdiction**

Finally, the School District argues that this Court lacks subject matter jurisdiction over the amended petition because the School District's annual determination of the funding rates payable to charter schools is an adjudication under the Local Agency Law,[11] and it was not timely appealed by Chester School.

---

11. 2 Pa.C.S. §§ 551–555, 751–754.

Section 101 of the Local Agency Law defines an "adjudication" as

[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa.C.S. § 101. The School District claims that its determination of each year's funding, as set forth on the PDE–363 form submitted to the Department, was an adjudication. Chester School was required to file an appeal to the trial court within thirty days of each year's determination under 42 Pa.C.S. § 933(c)(1).[12] Because Chester School did not appeal within the thirty-day statutory period in the Local Agency Law, the School District claims that Chester School has waived judicial review of the School District's funding.

Chester School responds that the School District's submission of the PDE–363 form is not a final order and, as such, does not constitute an adjudication. Chester School explains that the School District regularly revises, amends and alters the PDE–363 form throughout the school year in accordance with the Department's guidelines. Indeed, if the 2006–2007 school year PDE–363 forms had been a final adjudication, then Chester School would have had to file five separate appeals during that school year alone. In any case, Chester School contends that it has never been given notice and an opportunity to be heard on the PDE–363 form. The School District rarely, if ever, served Chester School with a copy of the completed PDE–363 form. The School District did not make findings of fact or conclusions of law in this annual "adjudication" and did not serve it upon Chester School.[13]

■ We agree with Chester School that the School District's completion of the Department's educational funding calculation form, PDE–363, is not an adjudication because it is not final. The Department's Guidelines expressly permit the School District and the Department to amend the PDE–363 form throughout the school year. For example, the Guidelines state that after the form is completed, it may be revised by the school district "if a significant miscalculation was made when the form was completed." Amended Petition for Review, Exhibit 31. Further, the Guidelines provide that if the school district includes impermissible amounts in its calculation of total expenditures, the Department "may revise amounts reported on the form to eliminate unauthorized deductions." *Id.*

The School District's annual determination of the funding rates payable to charter schools, the PDE–363 form, lacks the requisite finality to be an adjudication under the Local Agency Law. Accordingly, the School District's challenge to this Court's subject matter jurisdiction over the amended petition lacks merit.

### Conclusion

There are a number of affirmative defenses that have been hinted at by the

---

**12.** That section provides:

The jurisdiction of a court of common pleas of a judicial district under this section shall be exclusive as to a government agency which has jurisdiction only within such judicial district, and shall be concurrent with the courts of common pleas of all judicial districts in which the government agency has jurisdiction where such agency has jurisdiction in more than one judicial district. 42 Pa.C.S. § 933(c)(1).

**13.** Completed PDE–363 forms are available on the Department's website, along with the reported funding rates for each school district in the Commonwealth.

School District and the Department. These defenses may be presented in their answers, but they cannot be considered at this point in the proceeding. As explained above, Chester School's amended petition for review has stated a claim against the Department in Counts I, II, III and IV. However, the petition does not state a claim against the School District in Count II.

Accordingly, we overrule the preliminary objections in part and sustain them in part.

## ORDER

AND NOW, this 3rd day of June, 2010, the preliminary objections filed by the Pennsylvania Department of Education (Department) to Counts I, II, III and IV of the amended petition for review filed by the Chester County Charter School (Chester School) are hereby OVERRULED. The amended preliminary objections filed by the Chester–Upland School District and the Chester–Upland School District Education Empowerment Board (School District) to Counts I, III and IV of the amended petition for review filed by the Chester County Charter School are OVERRULED. The amended preliminary objection filed by the School District to Count II is SUSTAINED. An answer to all Counts of the amended petition for review not dismissed must be filed within 30 days of this Order. Chester School's motion to strike the Department's reply brief is DENIED. The Department's retroactive application for leave to submit a reply brief is MOOT.