# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce J. Chasan, Esq., :
                 Appellant :
                                       :
          v. : No. 47 C.D. 2020
                                         : Argued: November 12, 2020
William H. Platt, Esq., Retired Superior :
Court Judge, Susan Peikes Gantman, :
Superior Court Judge, Maria :
McLaughlin, Superior Court Judge :

BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE J. ANDREW CROMPTON (P.), Judge

OPINION
BY JUDGE CROMPTON                        FILED: December 14, 200

Bruce J. Chasan, Esq. (Lawyer), representing himself, appeals an order of the Court of Common Pleas of Philadelphia County (Trial Court) sustaining the preliminary objections of then-Judges of the Pennsylvania Superior Court, William H. Platt, Esq. (retired), Judge Susan Peikes Gantman, and Judge Maria McLaughlin (collectively, Judges), and dismissing, with prejudice, his Second Amended Complaint (SAC) that sought declaratory relief for alleged defamatory statements contained in *Carmen Enterprises, Inc. v. Murpenter, LLC*, 185 A.3d 380 (Pa. Super. 2018), *appeal denied*, 201 A.3d 725 (Pa. 2019) (Judicial Opinion). The Judicial Opinion disposed of cross-appeals over the amount of attorney fees awarded for Lawyer's work on behalf of Carmen Enterprises, Inc. (Client), a travel agency that Lawyer owned as sole shareholder and served as President. The Trial Court held Judges were judicially immune from suit. Upon review, we affirm.

## I. Background

In 2002, on behalf of Client, Lawyer filed the initial complaint alleging a breach of a purchase and sale agreement by Murpenter, LLC (Defendant) in the Montgomery County Court of Common Pleas (Litigation). *See* SAC ¶ 21; Reproduced Record (R.R.) at 12a-54a. Relevant here, the agreement contained a provision for "reasonable attorney's fees" in the event of breach. *Id.* ¶ 7. At that time, Lawyer was employed as an intellectual property attorney in a Philadelphia law firm (Firm). However, Lawyer was no longer employed by the Firm after 2011, and then served as of counsel in 2012. The Litigation to which the fees related was ongoing for more than a decade, involving motions practice, filings, and appeals in multiple courts. A brief overview of the salient procedural history of the Litigation follows.

Initially, Defendant successfully moved for partial summary judgment, precluding Lawyer from receiving contractual attorney fees based on his role with Client. *See* Order, (Montg. Ct. Common Pleas (C.C.P.), No. 02-07223, June 17, 2003). The matter was then tried in a bench trial before Judge Richard P. Haaz in April 2013. Client obtained a $45,057.47 verdict. The parties filed post-trial motions, which Judge Haaz denied as to Defendant, and granted as to Client. Client filed a motion to mold the verdict to account for Client's successful verdict and post-trial motions, which the court, through Judge Haaz, ultimately granted. The verdict was then molded to include pre- and post-judgment interest, attorney fees, and costs. However, while fees were awarded for Client's other counsel, the order awarded "$0" for Lawyer's fees. R.R. at 61a; Order, (Montg. C.C.P., No. 02-07223, Mar. 12, 2014). Client appealed this order.

On appeal, the Superior Court reversed the partial summary judgment order that precluded fees for Lawyer's time and remanded the matter for a hearing on Lawyer's reasonable attorney fees related to the Litigation. *Carmen Enters., Inc.*

*v. Murpenter, LLC* (Pa. Super., Nos. 950/1115 EDA 2014, filed Aug. 12, 2015), 2015 WL 6698621 (unreported), *appeal denied*, 141 A.3d 477 (Pa. 2016).  The Superior Court ruled the inclusion of Lawyer's fees was permissible and directed the lower court to hold a hearing limited to the amount of attorney fees.

In 2016, following a hearing where Lawyer testified regarding his fees, Judge Haaz determined the reasonable fees for Lawyer's services over the claimed 13-year period.  Judge Haaz noted there was no fee agreement between Lawyer and Client that set forth Lawyer's billing rate.  While there was evidence regarding his rate while working at the Firm, Judge Haaz noted Lawyer was working as a solo practitioner at the time of the hearing.  He also found that Lawyer submitted no evidence regarding his hourly rate while working as a solo practitioner.  Judge Haaz concluded "that the sum of $405,400.00 [was] a reasonable fee for the services provided by [Lawyer] in his capacity as a legal professional."  R.R. at 100a; *see* Order, (Montg. C.C.P., No. 2002-07223, June 15, 2017) (Fee Award).  The Fee Award represented less than half of the $1 million Client sought to recover for Lawyer's fees.  Both parties appealed the Fee Award to the Superior Court.

On appeal, in eight of the nine issues raised, Client questioned the reduction of fees.  Lawyer asserted the Fee Award constituted a substantial reduction in both the hours claimed and the rate at which Lawyer billed his work.  SAC ¶46.  Specifically, he challenged the lower court's reduction of his hourly rate; fees were awarded based on a rate of $200 per hour instead of $450 per hour, which was Lawyer's rate in 2009 while he was a patent lawyer at the Firm.

In the Judicial Opinion at issue in this appeal, the Superior Court affirmed the Fee Award.  In its decision, the Court reasoned an award of attorney fees is within a fact-finding court's discretion, and based on the complexity of the

issues, the fact-finder may reduce the number of hours or the hourly rate. As such, the Superior Court determined the lower court was within its powers on this matter.

The Judicial Opinion stated the "threshold issue for [Client] (and [Lawyer]) throughout the [L]itigation had to be (or should have been) the amount of money obtainable in relation to the amount of fees for the reasonable legal services necessary to obtain it." *See* Judicial Opinion, 185 A.3d at 393 (citation omitted). The Judicial Opinion noted the lower court concluded: "[Client] failed to convince the [lower] court that the total hours claimed for these services are reasonable or justified. Accordingly, the court will not include these 511.1 hours in determining a reasonable fee." *Id.* at 394 (citing Tr. Ct., Memo. & Order, (Jan. Memo. & Order) 1/16/20, at 8). Ultimately, the Superior Court, through the Judges' Judicial Opinion, held: "On independent review, we discern no error or abuse of discretion in the trial court's ruling. None of [Client's] numerous complaints, many unsupported, marginal or trivial, justify disturbing the decision of the [lower] court. Client's claims merit no further relief." *Id.* at 394.

Lawyer filed a petition for reargument and for reargument *en banc*, asserting the appeals should have been quashed because the lower court's order was not final. The Superior Court denied the petition. Client then filed a petition for allowance of appeal to the Supreme Court, which was denied on February 4, 2019.

In addition, in July 2018, Client filed an application for relief with the Superior Court seeking revisions to the Judicial Opinion (Revision Application), which the Superior Court denied. The Pennsylvania Supreme Court then denied Lawyer's "Application for Relief Regarding Defamatory Statement in Superior Court Precedential Opinion Which the Superior Court Refused to Correct in an Order Denying [Revision Application] Presented in that Court." Jan. Memo. & Order at 2-3.

4

Following the denial of his requests to revise the Judicial Opinion to remove portions he considered defaming, Lawyer filed the initial complaint in the Trial Court seeking declaratory relief to compel removal of allegedly objectionable language from the Judicial Opinion. In August 2019, Lawyer filed the SAC, comprised of five counts of defamation as to the parts of the Judicial Opinion to which he objected, to which he appended a number of exhibits. *See* Ex. A-K (R.R. at 55a-172a). In general, the SAC alleged Judges exceeded their jurisdiction by making findings of fact that conflicted with or were not contained in the Fee Award. Specifically, Lawyer claimed defamation as to: use of Firm letterhead in note 13 (Count I); implying that Lawyer concealed his solo billing practices from the lower court (Count II); characterization of Lawyer as alter ego of Client in note 15 (Count III); use of the word "threatening" to refer to Lawyer's conduct (Count IV); and "belittlement" of the multi-count complaint in the Litigation (Count V). Lawyer sought a declaration that these parts of the Judicial Opinion constituted defamation.

On August 20, 2019, Judges filed preliminary objections in the nature of a demurrer and a brief in support. *See* Prelim. Objs. (R.R. at 173a-78a); Br. in Support (R.R. at 204a-27a). Judges alleged Lawyer's "[SAC] asks for declaratory relief only: a declaration that [] Judges defamed him in the [Judicial] Opinion." Prelim. Objs. ¶11 (R.R. at 177a). Thus, Judges asserted "[Lawyer's] action is barred by judicial immunity, judicial privilege, sovereign immunity, high public official immunity, and failure to state a declaratory judgment claim." *Id.* ¶12.

Lawyer did not object to the preliminary objections. Rather, Lawyer filed a 67-page brief in opposition to the preliminary objections. R.R. at 228a-98a. Relevant here, in his response (brief), Lawyer did not challenge the assertion of the immunity defenses on procedural grounds, as properly pled in new matter.

5

The Trial Court issued an order and memorandum dated January 16, 2020, under Judge Stella Tsai. After reviewing the legal standard applicable to a demurrer, the Trial Court considered the immunity defenses Judges raised in their preliminary objections. It reasoned immunity may be considered on preliminary objections as a basis for dismissal when it is clear from the face of the complaint. It noted that Lawyer waived the procedural defect of raising the affirmative defenses by preliminary objections because Lawyer did not object to the procedure by filing his own preliminary objections.

The Trial Court determined "Lawyer's action is barred by the doctrine of judicial immunity" because the defamation claim was predicated on content in the Judicial Opinion decided by Judges in their judicial capacity. Tr. Ct., Order, 1/16/20, at 10. It explained the appeal of the Fee Award was within the Superior Court's exclusive jurisdiction over appeals from the county courts of common pleas such that Judges were acting within their subject matter jurisdiction. Therefore, the Trial Court dismissed the SAC "with prejudice." *Id.* at 11. Lawyer filed a notice of appeal.

In his statement of errors complained of on appeal, Lawyer asserted judicial immunity did not apply because the acts underlying his claims were outside Judges' proper jurisdiction. He claimed certain parts of the Judicial Opinion, comprised of findings, credibility determinations, and commentary, constituted defamatory statements from which he sought declaratory relief.

In its Rule 1925(a) opinion, Pa. R.A.P. 1925(a), the Trial Court focused on the doctrine of judicial immunity; it did not analyze Judges' other immunity defenses. Specifically, it noted the similarity between the statements Lawyer sought to have deleted or revised in his Revision Application and the sources of defamation outlined in the SAC as follows:

1) correction or deletion of footnote 13,[1] regarding [Lawyer's] filings in the bankruptcy court supposedly using his former [Firm's] stationery, because the statement in the footnote was demonstrably wrong and defamatory, and there was nothing the Judges could do to correct it, other than deleting the footnote [Firm affiliation objection in Count I];

2) deletion of portions of the opinion that belittled [Client's] multi-count complaint because Pa.R.[C.]P. [No.] 1020(d) requires joinder of all claims, or risk waiver, and the numerous counts were all well-founded [characterization of multi-count complaint objection in Count V];

3) deletion of the language that [Lawyer] "threatened"[2] [Opposing Counsel] with high legal fees; [threatened objection in Count IV] and

4) deletion of footnote 15[3] regarding the unnecessary "alter ego" language [alter ego objection in Count III].

---

[1] Note 13 states: "Nevertheless, the correspondence and document filings in the record from the bankruptcy proceedings bear the letterhead of the [Firm] where [Client] then worked." *Carmen Enterprises, Inc. v. Murpenter, LLC*, 185 A.3d 380, 386 n.13 (Pa. Super. 2018), *appeal denied*, 201 A.3d 725 (Pa. 2019) (Judicial Opinion).

[2] Lawyer requested the word threatened be changed to "warned" in the revised draft of the Judicial Opinion he submitted for the Superior Court's consideration of his Revision Application.

[3] Note 15 of the Judicial Opinion, with citations to case law omitted, states:

We have not overlooked [Client] and [Lawyer's] apparent general disregard, as evident in the record before us, for the observance of proper formalities in the conduct of [Client's] corporate activities, as argued by [Defendant]. (*See* Appellee's Brief, at 19); *see also* Appellant's Brief, at 15: ("Any written agreement would have been artificial and unnecessary."). [Client] even appears on occasion to use their names almost interchangeably. (*See, e.g.*, Appellant's Brief, at 32 (at "trial ... [Client] decided [Lawyer] would handle the other witnesses"); *id.* at 40, ("[Client] concedes it was disappointed . . . .") (emphasis added)). It is axiomatic that a corporation can act only though [sic] its officers, employees, and other agents. Absent any evidence of proper formal authorization of corporate action, (*e.g.*, a corporate resolution, minutes of shareholder's meeting, etc.), most of [Lawyer's] efforts to simulate proper and valid corporate action by imputing human acts to [Client] are legally frivolous and verge on the ludicrous. (*See*[,] *e.g.*[,] [Client] Brief, at 14) ("[Client] and [Lawyer] had a mutual understanding . . ."); (*id.* at 15 ("[Client] decided to file a complaint"); ("[Client] and [Lawyer] agreed to terms, including an agreed billing rate."). Nevertheless, it appears that [Defendant] did

**(Footnote continued on next page…)**

7

Tr. Ct., Slip Op., 3/23/20, at 2-3. In addition to these previously requested revisions, Lawyer sought deletion of portions of the Judicial Opinion that allegedly criticized his billing practices.[4] *Id.* at 3 ("[Lawyer] further claims that [Judges] defamed him by 'finding' that he concealed his solo billing practices from the [lower] court."). After briefing and argument, the matter is ready for disposition.

## II. Discussion

On appeal,[5] Lawyer asserts the SAC alleged sufficient facts that the "defamatory factual findings by [Judges] in their opinion were either totally absent in the [lower] court opinions or in conflict with findings in the [lower] court opinions" such that Judges were acting outside their jurisdiction. Appellant's Br. at 3. Lawyer argues the Trial Court erred in holding Judges immune from suit, maintaining that judicial immunity only applies to suits for monetary damages, which he is not pursuing. He claims the Judicial Opinion "wrongfully diminished [Lawyer's] reputation **in perpetuity**," *id.* at 6 (bold in original), and that the SAC outlined the defamatory statements in detail. Indeed, Lawyer appended to the SAC, as Exhibit J, a revised opinion that edited the objectionable aspects of the Judicial Opinion.

---

not present and develop any "alter ego" issue at trial, or seek to pierce the corporate veil. Therefore, we disregard further consideration of corporate veil or alter ego issues for the purpose of our analysis and decision.

[4] Though the statements to which Lawyer objected in the Revision Application are also cited in his defamation claims in the SAC, *res judicata* does not apply as the SAC involves different parties, different claims, and different relief. Moreover, the Revision Application was ancillary to the Judicial Opinion, which involved contractual attorney fees, and the SAC does not challenge the merits of or result in the Judicial Opinion, which was in Client's favor. *Cf. Doheny v. Dep't of Transp., Bureau of Driver Licensing*, 171 A.3d 930 (Pa. Cmwlth. 2017).

[5] "Our scope of review of a trial court order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law." *Logan v. Lillie*, 728 A.2d 995, 998 n.1 (Pa. Cmwlth. 1999) (upholding dismissal of complaint seeking both monetary and equitable relief on judicial immunity grounds).

8

**A. Preliminary Objection Standard & Procedure**

Within their preliminary objections, Judges raised judicial immunity, among other defenses. Judges also asserted a demurrer, challenging the legal sufficiency of the SAC as to the declaratory judgment claim that seeks a declaration that the four identified parts of the Judicial Opinion (1-4) constitute defamation.

**1. Demurrer**

It is well established that "preliminary objections in the nature of a demurrer admi[t] all well-pleaded, material and relevant facts in the complaint." *Unger v. Hampton Twp.*, 263 A.2d 385, 387 (Pa. 1970). A demurrer also admits as true every inference fairly deducible from those facts. *Palmer v. Bartosh*, 959 A.2d 508 (Pa. Cmwlth. 2008). The court is not required to accept as true legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinion. *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160 (Pa. Cmwlth. 2013) (*en banc*).

Since sustaining a demurrer results in denial of the plaintiff's claim or a dismissal of his suit, only where the pleading is "facially devoid of merit" should the demurrer be sustained. *Wurth by Wurth v. City of Philadelphia*, 584 A.2d 403, 406 (Pa. Cmwlth. 1990) (*en banc*) (citation omitted). If the facts as pleaded state a claim for which relief may be granted under *any* theory of law, there is sufficient doubt to require rejection of the demurrer. *Palmer.* However, it must be clear the law will not permit recovery, and any doubt must be resolved in favor of the non-moving party. *Key v. Pa. Dep't of Corr.*, 185 A.3d 421 (Pa. Cmwlth. 2018).

**2. Immunity Defenses Raised by Preliminary Objection**

Technically, the Pennsylvania Rules of Civil Procedure prohibit a defendant from raising the affirmative defense of immunity by way of preliminary

objection. Rather, the affirmative defense of immunity should be raised in an answer to the complaint under the heading "New Matter." *See* Pa.R.C.P. Nos. 1028, 1030. In pertinent part, and with emphasis added, Pa.R.C.P. No. 1030 provides:

> (a) Except as provided by subdivision (b), <u>all affirmative defenses including</u> but not limited to the defenses of . . . <u>immunity from suit</u> . . . shall be pleaded in a responsive pleading under the heading "New Matter." A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

"Should a plaintiff wish to contest the defense on this procedural ground, the plaintiff must file a preliminary objection to the preliminary objection." *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014).

When a party *responds* to the preliminary objections, instead of challenging the procedure by filing its own preliminary objections, the party has waived any challenge to the form of pleading the defense. *See Feldman v. Hoffman*, 107 A.3d 821 (Pa. Cmwlth. 2014). Generally, however, when not objected to in preliminary objections, courts have been moving away from this strict interpretation and it is now currently accepted that immunity is a defense that may be raised by preliminary objection "when to delay a ruling thereon would serve no purpose." *Faust v. Dep't of Revenue*, 592 A.2d 835, 838 n.3 (Pa. Cmwlth. 1991). *But see Rufo v. Bastian-Blessing Co.*, 207 A.2d 823 (Pa. 1965) (trial court may only consider immunity defense raised by preliminary objection if plaintiff does not object).

Further, "Pennsylvania courts have long recognized a limited exception to this rule and have allowed parties to plead the affirmative defense of immunity as a preliminary objection where the defense is <u>clearly applicable on the face of the complaint</u>." *Feldman*, 107 A.3d at 829-30 (emphasis added) (citing string of cases); *see also Logan v. Lillie*, 728 A.2d 995 (Pa. Cmwlth. 1999) (involving suit against

judicial defendants and successful assertion of judicial immunity). In fact, "[w]here, however, the asserted affirmative defense is clearly applicable on the face of the complaint, the court will consider it unless the plaintiff advances some reason, 'other than prolonging the matter,' to defer consideration." *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 515 (Pa. Cmwlth. 2019) (quoting *Feldman*, 107 A.3d at 835) (when method of raising immunity defense challenged, upheld overruling of preliminary objection because immunity was not clear on face of complaint).

Applying the rule and the exceptions as set forth in decisional law here, the Trial Court did not err in considering the immunity defenses Judges raised by preliminary objection. Because the SAC names Judges as defendants for (allegedly defamatory) content in the Judicial Opinion, the judicial immunity defense is evident on the face of the complaint. Further, Lawyer offered no cause for delaying consideration of this issue to a later stage of the proceedings and did not object to the procedure used for asserting immunity, thus waiving any objection on that ground. *Feldman*.

## B. Substance: Judicial Immunity

"[J]udicial immunity requires a two-part analysis: first, whether the judge has performed a **judicial act**; and second, whether the judge has some **jurisdiction** over the subject matter before [him]." *Langella v. Cercone*, 34 A.3d 835, 838 (Pa. Super. 2011) (emphasis added). This Court reasoned: "Judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not a clear absence of all jurisdiction over subject matter and person." *Robinson v. Musmanno* (Pa. Cmwlth., No. 39 C.D. 2010, filed May 28, 2010), slip op. at 3, 2010 WL 9516526,

11

at *1 (unreported)[6] (*per curiam*) (citing *Beam v. Daihl*, 767 A.2d 585 (Pa. Super. 2001)).

This Court recognizes judicial immunity is not only immunity from damages, but also "immunity from suit."[7] *See Guarrasi v. Scott*, 25 A.3d 394, 405 n.11 (Pa. Cmwlth. 2011) (citing *Mireles v. Waco*, 502 U.S. 9 (1991)) (explaining judicial immunity applied to a common pleas court judge); *Logan* (upholding dismissal of equitable claims seeking declaration that judicial officers' acts were unconstitutional). As such, judicial immunity is an available defense for declaratory relief. *See Guarrasi*; *Logan*; *accord Azubuco v. Royal*, 443 F.3d 302 (3d Cir. 2006).

Lawyer does not dispute that Judges issued the Judicial Opinion while acting as Superior Court Judges; rather, he asserts that the described comments and alleged fact-finding described in the SAC were not within Judges' jurisdiction because they are not permitted to make findings or credibility determinations on appeal. Lawyer thus challenges the application of the judicial immunity defense here.

### 1. Judicial Act

Notably, Lawyer does not contest that, when acting within their jurisdiction, "Judges are absolutely immune from liability . . . [for] judicial acts." *Logan*, 782 A.2d at 998. That Judges' issuance of the Judicial Opinion constitutes a "judicial act" is beyond peradventure. *See Musmanno*; *see also* Appellant's Reply Br. at 6 (acknowledging that "writing an appellate opinion is a 'judicial act'").

---

[6] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[7] "Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." *Dennis v. Sparks*, 449 U.S. 24, 31 (1980) (distinguishing suit against judge for damages) (citations omitted).

## 2. Jurisdiction

We examine Lawyer's primary argument that immunity does not attach because the alleged defamatory statements in the Judicial Opinion constitute fact-finding and thus exceed the statutory confines of appellate judging. Lawyer contends that Judges acted outside their jurisdiction by making findings and credibility determinations, thus, usurping the role of fact-finder.[8] He asserts the objectionable comments in the Judicial Opinion (*i.e.*, (1) Firm affiliation reference in footnote 13; (2) implied concealment of solo billing rate; (3) alter ego discussion in footnote 15; (4) use of "threatening" to describe Lawyer's conduct toward opposing counsel; and (5) alleged belittlement of multi-count complaint) fell outside the statutory jurisdiction applicable to Superior Court Judges in the Judicial Code.

For judicial immunity to attach, the complained of acts (here, five comments in the Judicial Opinion), must be within the judicial actors' jurisdiction. In this context, this means the court's subject matter jurisdiction to consider the matter. *Feingold v. Hill*, 521 A.2d 33, 36-37 (Pa. Super. 1987). As our Supreme Court explained, this is distinguishable from whether judges are acting within their appropriate authority. "[J]urisdiction 'relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs.' Conversely, the power or, more aptly, the authority of the Court is its capacity 'to order or effect a certain result.'" *In re Bruno,* 101 A.3d 635 (Pa. 2014) (citation omitted).

The statutory jurisdiction applicable to Judges is found in Sections 741 and 742 of the Judicial Code, 42 Pa. C.S. §§741, 742, which outline the jurisdiction

---

[8] We lack authority to consider material beyond the SAC and make findings regarding the content of pleadings in another action when reviewing the legal grounds for the Trial Court's dismissal of the SAC.

of the Superior Court. Section 741, relating to the Superior Court's original jurisdiction, provides:

> The Superior Court shall have no original jurisdiction, except in cases of mandamus and prohibition to courts of inferior jurisdiction where such relief is ancillary to matters within its appellate jurisdiction, and except that it, or any judge thereof, shall have full power and authority when and as often as there may be occasion, to issue writs of habeas corpus under like conditions returnable to the said court.

42 Pa. C.S. §741. Section 742, relating to appellate jurisdiction, provides:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

42 Pa. C.S. §742 (relating to appeals from courts of common pleas).

These statutory provisions pertain to the propriety of subject matter jurisdiction over the issue in dispute and the parties to the dispute. Neither statutory provision prohibits or directly addresses the authority of an appellate judge to engage in fact-finding or make credibility determinations. Those aspects of decision-making include the role of the court and the type of review, *i.e.*, how the court renders a decision, not whether the court may decide the matter before it. It is the former category of decision-making of which Lawyer complains.

While Judges lack the power or authority to make credibility determinations or find facts, they had proper jurisdiction to address the appeal of the Fee Award because a contract dispute with a non-governmental party on appeal from a court of common pleas is properly within its appellate jurisdiction under Section 742 of the Judicial Code. Also, the cases Lawyer cites for the proposition that a judge acts

14

outside his or her circumscribed appellate role involved reversal of the fact-finder. *See In re R.J.T.*, 9 A.3d 1179 (Pa. 2010). As a consequence, the alleged judicial overreach of authority into the fact-finding realm altered the result and disregarded the fact-finding below. Here, the Judicial Opinion affirmed the Fee Award, and so maintained the result reached by the fact-finder and deferred to the lower court's material findings regarding the hourly rate charged and the number of hours worked.

Jurisdiction is not negated when the alleged judicial act is not expressly authorized. *See Langella*. In *Langella*, while on the bench, the judge told the defendant to "shut up" and commented on her multiple cats (40) in an arguably pejorative manner. Despite that the judge's comments were arguably not properly judicial and authorized, because the comments were made while the judge was acting as a judge, they met the threshold for a judicial act within his jurisdiction. Similarly, the appeal from the Fee Award fell within Judges' statutory jurisdiction, and therefore satisfies the second requirement for judicial immunity.

In sum, we agree with the Trial Court that the Judicial Opinion constituted a judicial act that was issued within Judges' jurisdiction under Section 742 of the Judicial Code. Therefore, Judges are judicially immune from suit here.

### C. Demurrer: Declaratory Relief as to Defamation

Lastly, we consider whether the Trial Court erred in determining Lawyer failed to state a cognizable claim for declaratory judgment as to the alleged defamation[9] contained in the Judicial Opinion.

---

[9] In a defamation claim, a plaintiff bears the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. C.S. §8343(a); *see Feldman*
**(Footnote continued on next page…)**

15

Because judicial immunity is clear on the face of the SAC, and the SAC cannot be amended to obtain relief as to the named parties,[10] the Trial Court did not err in sustaining the demurrer to the declaratory judgment claim.[11] *See Guarrasi.* At its core, the purpose of declaratory relief is to address an imminent dispute or actual controversy. The judicial acts that Lawyer complains of are in the past, such that the declaration would not aid in resolution of a current or imminent dispute.

Also, judicial immunity applies to requests for equitable relief. *See id.*; *Logan.* The rationale for ensuring judicial actors are immune from suit is equally applicable to an action for declaratory judgment, *i.e.*, to ensure judicial decision-makers' judgment is not compromised by a concern over being sued. Were this Court to allow an action seeking revisions in a judicial opinion to proceed, any dissatisfied litigant may then utilize a declaratory judgment action as a sword against the judicial authors of what the litigant perceives is an unflattering or critical opinion.

Having concluded that the Trial Court properly held judicial immunity bars the claims against Judges, we need not address the other defenses. *See Guarrasi.*

---

*v. Lafayette Green Condo. Ass'n*, 806 A.2d 497 (Pa. Cmwlth. 2002). Though offensive to the subject, generally, a statement that is merely an expression of opinion is not defamatory. *Id.*

[10] In not affording Lawyer an opportunity to amend the SAC (the third pleading), the Trial Court did not err. A complaint is properly dismissed without allowance for amendment when leave to amend would be a futile exercise. *See Carlino v. Whitpain Invs.*, 453 A.2d 1385 (Pa. 1982).

[11] The Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541, is "remedial[;] [i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." 42 Pa. C.S. §7541(a). Declaratory judgment is appropriate only where there exists an actual controversy. *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68 (Pa. Cmwlth. 2010). "An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically *help to end the controversy between the parties*." *Id.* at 80 (emphasis added).

### III. Conclusion

For the foregoing reasons, this Court affirms the Trial Court's order.

_____
J. ANDREW CROMPTON, Judge

Judge Ceisler did not participate in the decision of this case.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce J. Chasan, Esq.,                   :
                  Appellant    :
                                      :
               v.    :   No. 47 C.D. 2020
                                        :
William H. Platt, Esq., Retired Superior  :
Court Judge, Susan Peikes Gantman,       :
Superior Court Judge, Maria              :
McLaughlin, Superior Court Judge         :

# **O R D E R**

**AND NOW**, this 14th day of December 2020, the order of the Court of Common Pleas of the County of Philadelphia is AFFIRMED.

_____

J. ANDREW CROMPTON, Judge