IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Mifflin Area School District;    :
and Phil Shar, Resident and        :
Taxpayer of the West Mifflin        :
Area School District,           :
           Petitioners    :
                           :
          v.          :  No. 314 M.D. 2016
                           :  Argued:  November 14, 2016
Pedro A. Rivera, Secretary of     :
Education of the Commonwealth  :
of Pennsylvania; the Pennsylvania  :
Department of Education;       :
Duquesne City School District;    :
and Paul B. Long, Receiver for    :
Duquesne City School District,   :
           Respondents   :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE JOSEPH M. COSGROVE, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT           FILED:  January 17, 2017

          West Mifflin Area School District and Phil Shar, a taxpayer, (collectively, West Mifflin) have filed a petition for review in the nature of a mandamus and declaratory judgment action (Petition) that challenges the amount of tuition West Mifflin is paid for educating students from the Duquesne City School District. In its effort to secure more funding, West Mifflin has filed the instant Petition against the Pennsylvania Department of Education; Pedro Rivera, the Secretary of Education; the Duquesne City School District; and the Duquesne City School District's receiver, Dr. Paul B. Long. The respondents have filed

various preliminary objections seeking a dismissal of the petition for failing to state a claim upon which relief may be granted.

## Background

On July 14, 2000, the Secretary of Education placed the Duquesne City School District (Duquesne) on the Education Empowerment List. Petition for Review, ¶11. In October of 2000, the Secretary declared Duquesne a financially distressed school district and placed it under the management of a Special Board of Control. *Id.* at ¶¶12-13. On or about June 5, 2007, the Board of Control closed Duquesne High School, which consisted of grades 9 through 12. *Id.* at ¶15. In July 2007, the Secretary of Education designated West Mifflin as one of two school districts that must accept high school students from Duquesne High School on a tuition basis. *Id.* at ¶18.

West Mifflin commenced litigation to challenge the constitutionality of Act 45,[1] the statute that authorized the transfer of Duquesne students to West Mifflin. On September 29, 2010, the Pennsylvania Supreme Court held that Act 45 was unconstitutional as "special legislation" because it created a class of one member, Duquesne. *West Mifflin Area School District v. Zahorchak*, 4 A.3d 1042, 1049 (Pa. 2010).

Thereafter, the General Assembly enacted Act 123[2] to amend Section 1607(b) of the Public School Code, 24 P.S. §16-1607(b). This amendment

---

[1] Act of July 20, 2007, P.L. 278, No. 45. Act 45 added Sections 1607.1 and 1113(b.2) to the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§16-1607.1, 11-1113(b.2).

[2] Act of November 23, 2010, P.L. 1350, No. 123.

2

authorized the Secretary of Education to designate two or more adjacent school districts to accept, on a tuition basis, high school students from third class school districts that are declared distressed. The amendment also authorized the Secretary of Education to establish a per-pupil tuition rate to compensate a school district assigned students from an adjacent district. The Secretary of Education again designated West Mifflin as one of the two school districts to accept Duquesne high school students.

In the summer of 2011, pursuant to Act 123, Duquesne high school students began choosing a high school in one of the school districts adjacent to Duquesne. At approximately the same time, Duquesne sought and received approval from the Department of Education to end its junior high school program for grades 7 and 8; West Mifflin then received 7th and 8th grade students from Duquesne. Petition for Review, ¶31. In November 2012, the Secretary appointed Dr. Paul B. Long receiver for Duquesne.

West Mifflin contends that, since the 2007-2008 school year, it has been educating Duquesne students without adequate funding. Petition for Review, ¶¶44, 58, 124, 133. The tuition paid to West Mifflin bears no relationship to tuition calculations made in other circumstances. For example, the per pupil tuition rate does not differentiate between a regular education student and a student receiving special education services (exceptional students). *Id.* at ¶64. Some of Duquesne's exceptional students have disabilities that require placement in a special school, and these costs have been borne by West Mifflin. *Id.* at ¶68. Other Duquesne exceptional students require therapeutic support services and one-on-one aides, resulting in additional costs to West Mifflin that, again, are not covered by

3

Duquesne's tuition payments. *Id.* at ¶71. By contrast, Duquesne pays a significantly higher tuition rate to a charter school chosen by a Duquesne exceptional student. *Id.* at ¶78. Likewise, West Mifflin has paid more than $640,000 in tuition for Duquesne students who attend career and technical programs at the Steel Center for Career and Technical Education (Steel Center). *Id.* at ¶92. West Mifflin has incurred more than $120,000 in unreimbursed transportation expenses associated with its transportation of reassigned Duquesne students. *Id.* at ¶104.

On May 23, 2016, West Mifflin filed the instant six-count Petition. Count I seeks a writ of mandamus to compel Respondents to recalculate the amount of tuition owed by Duquesne to West Mifflin. Count II seeks a declaratory judgment that Section 1607(b) of the Public School Code violates Article III, Section 32 of the Pennsylvania Constitution[3] because the tuition rate is arbitrary

---

[3] It states:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
> 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:
> 2. Vacating roads, town plats, streets or alleys:
> 3. Locating or changing county seats, erecting new counties or changing county lines:
> 4. Erecting new townships or boroughs, changing township lines, borough limits or school districts:
> 5. Remitting fines, penalties and forfeitures, or refunding moneys legally paid into the treasury:
> 6. Exempting property from taxation:
> 7. Regulating labor, trade, mining or manufacturing:
> 8. Creating corporations, or amending, renewing or extending the charters thereof:

**(Footnote continued on the next page . . . )**

and bears no rational relationship to any legitimate government purpose. Count III seeks a writ of mandamus to compel Respondents to transfer federal special education funding from Duquesne to West Mifflin. Count IV seeks damages from Duquesne and Dr. Long for not paying for the vocational education of Duquesne students. Count V seeks damages because Duquesne and Dr. Long have been unjustly enriched by not paying what is owed to West Mifflin. Count VI seeks a writ of mandamus to compel the Secretary to establish an Education Advisory Committee and begin the reporting required by statute.

Respondents filed preliminary objections seeking to dismiss the Petition. On preliminary objections, our review is limited to the pleadings. *Pennsylvania State Lodge, Fraternal Order of Police v. Department of Conservation and Natural Resources*, 909 A.2d 413, 415 (Pa. Cmwlth. 2006), *affirmed*, 924 A.2d 1203 (Pa. 2007). When reviewing preliminary objections,

> [this Court is] required to accept as true the well-pled averments set forth in the ... complaint, and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

---

**(continued . . . )**
    Nor shall the General Assembly indirectly enact any special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed.
PA. CONST. art. III, §32.

*Id.* at 415-16 (citations omitted).

### Count I:    Mandamus
### (Against all Respondents)

A writ of mandamus is used to compel the performance of a ministerial and mandatory duty. "The burden of proof falls upon the party seeking this extraordinary remedy to establish his legal right to such relief." *Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996). A party "must demonstrate: a clear legal right for performance of an act by the government; a corresponding duty in the government to perform the ministerial act and mandatory duty; and the absence of any other appropriate or adequate remedy." *Chester Community Charter School v. Department of Education*, 996 A.2d 68, 75 (Pa. Cmwlth. 2010). "A mandatory duty is 'one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority.'" *Id.* (citing *Filippi v. Kwitowski*, 880 A.2d 711, 713 (Pa. Cmwlth. 2005)).

### a.    Duquesne's preliminary objection

Duquesne contends that Count I does not state a claim because it does not have a duty to calculate the tuition rate paid to West Mifflin; this duty belongs to the Secretary of Education. Indeed, Count I recites that the Secretary sets the per pupil tuition rate and that "Duquesne paid the tuition rates in the 2012-2013 through 2015-2016 school years in the manner directed by the Secretary." Petition for Review, ¶50.

West Mifflin responds that Section 1607(b)(4) of the Public School Code, 24 P.S. §16-1607(b)(4), establishes a formula for calculating tuition, and the tuition paid by Duquesne deviates from that formula. This deviation entitles West

6

Mifflin to damages under 42 Pa. C.S. §8303.[4]  Duquesne had the duty to pay a tuition that conformed to the formula set in Section 1607(b)(4).

Section 1607 of the Public School Code compels a school district with a curtailed high school program to pay the amount determined by the formula in Section 1607(b)(3)-(4).  It states, in relevant part, as follows:

> (b) *If a third class school district* operating under a special board of control pursuant to [24 P.S. §6-692 (repealed)] has, with the approval of the Secretary of Education, *curtailed its educational program by eliminating its high school* and has not assigned its high school pupils to another school district and provided adequate transportation in a manner under subsection (a), *the secretary shall have the following authority*:
>
> ***
>
> (3) *To establish the per-pupil tuition rate* that a school district designated under paragraph (1) shall receive for each reassigned student in a regular or special education program.  For the 2010-2011 and 2011-2012 school years, the tuition rate established under this paragraph may not exceed the product of:
>
> (i)  the tuition rate established for the 2007-2008 school year; and
>
> (ii) the greater of:
>
> (A) two percent (2%); or

---

[4] Section 8303 provides:

> A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal.

42 Pa. C.S. §8303.

(B) the percentage increase in total budgeted revenues available to a distressed school district.

(4) For the 2012-2013 school year and each school year thereafter, the per pupil tuition rate that a school district designated under paragraph (1) shall receive for each reassigned student in a regular or special education program shall be the greater of ten thousand dollars ($10,000) or the product of:

(i) the tuition rate established for the prior school year; and

(ii) the greater of:

(A) the percentage increase in total budgeted revenues available to a distressed school district; or

(B) the index set pursuant to the act of June 27, 2006 (1st Sp.Sess., P. L. 1873, No. 1), [53 P.S. §§6926.101 – 6926.5006,] known as the "Taxpayer Relief Act," for the distressed school district.

24 P.S. §16-1607(b)(3)-(4) (emphasis added). In short, Section 1607(b)(4) gives the Secretary, not the school district, the authority to calculate the per pupil tuition rate. It does not impose any duty upon a school district, beyond payment of the established per-student tuition.

8

Count I does not allege that Duquesne has not paid the tuition set by the Secretary. Accordingly, Count I does not state a claim as to Duquesne under Section 1607(b)(4) of the Public School Code.

Count I also seeks to compel Duquesne to reimburse West Mifflin for the tuition it paid for Duquesne students attending a vocational school. West Mifflin contends that Duquesne has a mandatory duty to pay this tuition because Duquesne does not maintain or participate in an approved vocational program. Duquesne responds that West Mifflin has failed to state a claim because Duquesne participates in a vocational program at Steel Center.

The Public School Code requires a school district to pay for its students' vocational training. If it refuses, it can be held liable for breach of contract to the school attended by one of its students. Section 1809(c) of the Public School Code states as follows:

> (c) *The school district in which the person resides*, who has been admitted, as above provided, to an approved vocational industrial, vocational agricultural, vocational homemaking, vocational high or vocational distributive occupational school or department maintained by another school district, *shall pay the high school charge provided for by this act. If any school district neglects or refuses to pay for such tuition, it shall be liable therefor, in an action of contract, to the school district or school districts maintaining the school which the pupil, with the approval of the board, attended*.

24 P.S. §18-1809(c) (emphasis added). In addition, where a student resides in a "nonparticipating district,"

> [t]he school district in which the pupil resides shall be charged, for each *pupil attending the area vocational-technical school or*

9

> *technical institute*, an amount equal to the total approved budget for current expenses, debt service and capital outlay divided by the number of pupils enrolled in the school.

Section 1847 of the Public School Code; 24 P.S. §18-1847 (emphasis added).

In ruling on Duquesne's preliminary objections, we must accept the facts in the pleading as true. Count I alleges that Duquesne does not maintain or participate in an approved vocational program, which Duquesne disputes. A factual dispute precludes the grant of a demurrer. However, mandamus does not lie because Section 1809(c) of the Public School Code contains a statutory remedy, *i.e.*, breach of contract.

West Mifflin's real claim lies with the amount of tuition it receives for Duquesne students. This is a matter that must be addressed to the Secretary and, thus, Count I must be dismissed as to Duquesne.

### b. Preliminary Objections of the Department of Education, the Secretary, and Dr. Long

The Department, the Secretary, and Dr. Long (collectively, Commonwealth Respondents) contend that Count I fails to state a claim because it: (1) does not, and cannot, allege that the Secretary has failed to calculate an annual tuition rate pursuant to Section 1607(b)(4) of the Public School Code, 24 P.S. §16-1607(b)(4), and (2) fails to identify a duty in the Commonwealth Respondents to pay tuition associated with the vocational education costs of Duquesne's students. In addition, the Commonwealth Respondents contend that Count I does not satisfy the six-month statute of limitations for a mandamus action. Further, mandamus does not lie where, as here, West Mifflin seeks to appeal the Department's determination of the tuition rates to be paid to West Mifflin by Duquesne.

10

As noted, Section 1607(b)(4) of the Public School Code requires the Secretary to calculate the per pupil tuition rate for students residing in a third class school district operating under a board of control where the high school has been eliminated. 24 P.S. §16-1607(b)(4). Section 1607(b)(4) establishes the formula for the per pupil tuition rate, which is $10,000 unless a higher number is reached by taking the product of:

> (i)  the tuition rate established for the prior school year; and
>
> (ii)  the greater of:
>
>> (A) the percentage increase in total budgeted revenues available to a distressed school district; or
>>
>> (B) the index set pursuant to the act of June 27, 2006 (1st Sp.Sess., P. L. 1873, No. 1), known as the "Taxpayer Relief Act," [53 P.S. §§6926.101 – 6926.5006,] for the distressed school district.

*Id.*

Count I alleges that the Secretary did not follow the statutory formula by using the greater of either Duquesne's total budgeted revenue percentage increase or the Taxpayer Relief Act Index when calculating Duquesne's tuition rates. 24 P.S. §16-1607(b)(4). The Secretary's failure to comply with its mandatory, ministerial duty set by Section 1607(b)(4) subjects him to a writ of mandamus. The Commonwealth Respondents claim that the formula requires the exercise of discretion, which precludes a writ of mandamus. We agree with West Mifflin that the formula for setting the tuition rate is strictly mathematical and does not involve discretion.

11

However, the Commonwealth Respondents also argue that mandamus does not lie because West Mifflin had an adequate remedy at law, *i.e.*, an appeal of the Secretary's tuition rate. West Mifflin responds that Section 1607(b)(4) does not provide for a hearing where a school district is aggrieved by the Secretary's determination on a tuition rate. Further, Count I does not contain any allegations that the tuition schedule was set forth in an adjudication with findings of fact and conclusions of law, which is required by the Administrative Agency Law. 2 Pa. C.S. §507 ("All adjudications of a Commonwealth agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.").

The Administrative Agency Law[5] defines an "adjudication" as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa. C.S. §101. It is beyond peradventure that West Mifflin has a right to be paid the tuition required by statute. *Guthrie v. Borough of Wilkinsburg*, 478 A.2d 1279, 1281 (Pa. 1984) (adjudication is a determination that affects a right guaranteed by statute). The Administrative Agency Law governs all Commonwealth agencies, including the Department, and it provides that, "[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa. C.S. §504.

---

[5] 2 Pa. C.S. §§501-508, 701-704.

We have explained that where "there are no specific provisions regarding adjudicatory actions of an agency, the Administrative Agency Law [ ] provides a default mechanism for the provision of hearings and for appeals from administrative adjudications, which comport with due process requirements." *Turner v. Pennsylvania Public Utility Commission*, 683 A.2d 942, 946 (Pa. Cmwlth. 1996). Here, the default mechanism for challenging the tuition rates set by the Secretary is an administrative hearing before the Department of Education. The Secretary's tuition rate is a "determination" that affected Duquesne's "property rights." 2 Pa. C.S. §101. However, it was not final because there was no hearing. Likewise, the Secretary's determination did not have findings of fact and conclusions of law, which is required in order for a final determination, or adjudication, to be valid. The Administrative Agency Law provides the exclusive mechanism by which West Mifflin can challenge the merits of the Secretary's determination on tuition, whether on procedural or substantive grounds. The existence of this remedy forecloses West Mifflin's request for a writ of mandamus in Count I.[6]

> **Count II – Declaratory Judgment - Violation of Article III, §32 of the Pennsylvania Constitution (Against Commonwealth Respondents)**
>
> In Count II, West Mifflin seeks a declaration that
>
> [t]he tuition rate established by the Commonwealth for special education students reassigned from Duquesne to West Mifflin violates Article III, Section 32 of the Pennsylvania Constitution

_____

[6] Because we hold that West Mifflin has a remedy under the Administrative Agency Law that forecloses an action in mandamus, we need not consider the Commonwealth Respondents' alternate argument that the mandamus count was untimely filed.

13

in that the rate is wholly arbitrary, has no rational relationship to any legitimate government purpose, and treats similarly situated students, taxpayers and school districts in a discriminatorily different fashion – all to the great financial detriment of West Mifflin and its taxpayers.

Petition for Review, ¶161. The Commonwealth Respondents have demurred to this count for the stated reason that West Mifflin has not alleged "facts to demonstrate that the classification established under section 1607(b)(4) … is 'wholly irrelevant' to the objective of providing a thorough and efficient education for Duquesne students educated at and by West Mifflin...." Commonwealth Respondents' Preliminary Objections, ¶34.

Article III, Section 32 of the Pennsylvania Constitution states, in relevant part, as follows:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law … *[r]egulating the affairs of … school districts* [.]

Pa. Const. art. III, §32 (emphasis added). When reviewing a statute that is alleged to violate Article III, Section 32, our Supreme Court has explained that

> [o]ur constitutionally mandated concerns are to ensure that the challenged legislation promotes a legitimate state interest, and that a classification is reasonable rather than arbitrary and rest[s] upon some ground of difference, which justifies the classification and has a fair and substantial relationship to the object of the legislation. A legislative classification must be based on real distinctions in the subjects classified and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. In its review, a court may hypothesize regarding the reasons why the General Assembly created the classifications.

14

… A classification will, therefore, not violate Article III, Section 32, if it is one based on "necessity ... springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes and imperatively demanding legislation for each class separately that would be useless and detrimental to the others."

*Robinson Township v. Commonwealth*, 147 A.3d 536, 573 (Pa. 2016) (citations omitted).

West Mifflin asserts that Section 1607(b) of the Public School Code has singled out West Mifflin taxpayers for "particularized treatment" to benefit the Commonwealth. Petition for Review, ¶163. West Mifflin contends that there is no legitimate government purpose in having Duquesne pay higher tuitions to a public charter school than it pays to West Mifflin. Likewise, there is no legitimate government purpose served by having West Mifflin bear the expense of providing transportation to Duquesne's students while Duquesne pays for the transportation of its students to charter schools or for allowing Duquesne to include students enrolled in West Mifflin for purposes of allocating state funding. Accordingly, West Mifflin asks this Court to:

(a) [d]eclare 24 P.S. §16-1607(b)(4) to be unconstitutional in violation of Article III, §32 of the Pennsylvania Constitution;

(b) [d]eclare that West Mifflin must receive special education funding reflective of the actual costs associated with the services provided to Duquesne special education students over and above the regular tuition rate;

(c) [d]eclare that West Mifflin must be reimbursed for all costs associated with transportation of Duquesne students; [and]

(d) [d]eclare that West Mifflin can include Duquesne students in West Mifflin's ADM [average daily membership]

15

> calculations for the purposes of receipt of state subsidies and special education funding[.]

Petition for Review at 48.

The Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541, provides the means by which the moving party can settle "'rights, status, and other legal relations.'" *Office of the Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014) (citation omitted). There must exist a real or actual controversy; it is not to be used for the pursuit "of an advisory opinion which may prove to be purely academic." *Funk v. Wolf*, 144 A.3d 228, 251 (Pa. Cmwlth. 2016) (citing *Gulnac by Gulnac v. South Butler County School District,* 587 A.2d 699, 701 (Pa. 1991)). Lastly, "the mere fact that a constitutional question is raised as to the validity of a statute does not, without more, vest jurisdiction in a court of equity to adjudicate." *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 328 A.2d 819, 823 (Pa. 1974). "The additional element required … is either the absence of a statutorily-prescribed remedy or, if such remedy exists, then a showing of its inadequacy in the circumstances." *Id.*

West Mifflin seeks an advisory opinion. Were this Court to declare Section 1607(b)(4) of the Public School Code unconstitutional, it would not resolve this matter. Rather, it would result in West Mifflin not receiving any tuition while still having to educate the students. West Mifflin seeks higher tuition for the Duquesne students it educates, including Duquesne's special education students. There is a remedy by way of a hearing before the Department of Education. The Department cannot consider the constitutionality of Section 1607(b)(4), but it can make a factual record that relates to these issues. *See*

16

*Department of General Services v. Frank Briscoe Company, Inc.,* 466 A.2d 1336, 1341 (Pa. 1983) ("[T]he declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum."). We sustain the Commonwealth Respondents' demurrer to Count II.

### Count III – Mandamus:  Title I and Special Education Funding (Against all Respondents)

West Mifflin seeks a writ of mandamus to require all Respondents to remit all Title I funds received by Duquesne for students enrolled in West Mifflin schools from 2007 to present. In addition, West Mifflin wants to use Duquesne students in its district to calculate its federal funding entitlement. Duquesne argues that Count III should be dismissed because Duquesne has no duty to turn over funding that it may have received in prior years. The Commonwealth Respondents seek the dismissal of Count III on the stated ground that West Mifflin, a third party, does not have a right of action under the federal statute.

At issue are federal programs available to public schools, specifically the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400-1487, and the Elementary and Secondary School Act, Title I, 20 U.S.C. §§6301-6576. Count III alleges that Duquesne has received grants under these programs since the 2007-2008 school year but has not forwarded these grants to West Mifflin to cover the Duquesne students. West Mifflin argues that because Duquesne is not educating students above grade 6, it cannot include students enrolled in West

17

Mifflin schools in Duquesne's average daily membership (ADM). Duquesne contends that this violates federal law.

West Mifflin "must demonstrate: a clear legal right for performance of an act by the government; a corresponding duty in the government to perform the ministerial act and mandatory duty; and the absence of any other appropriate or adequate remedy." *Chester Community Charter School*, 996 A.2d at 75. West Mifflin, however, has not identified a federal statute or regulation that requires either Duquesne or the Commonwealth Respondents to turn over Title I funds or IDEA funds to West Mifflin.[7] Moreover, West Mifflin does not cite any federal

---

[7] West Mifflin directs this Court to 20 U.S.C. §6338(a) in support of its contention that Duquesne's failure to turn over funds to it flies in the face of the express purposes of Title I, Part A. We fail to see how this provision supports West Mifflin's argument, as it relates to neglected and delinquent children in institutions, not children being educated by a neighboring school district. Section 6338 provides, in relevant part:

(a) Allocations for neglected children
(1) In general
If a State educational agency determines that a local educational agency in the State is unable or unwilling to provide for the special educational needs of *children who are living in institutions for neglected children as described in section 6333(c)(1)(B) of this title*, the State educational agency shall, if such agency assumes responsibility for the special educational needs of such children, receive the portion of such local educational agency's allocation under sections 6333, 6334, 6335, and 6337 of this title that is attributable to such children.
(2) Special rule
If the State educational agency does not assume such responsibility, any other State or local public agency that does assume such responsibility shall receive that portion of the local educational agency's allocation.

20 U.S.C. §6338(a) (emphasis added). Section 6333(c)(1)(B) states:
the number of children (determined under paragraph (4) for either the preceding year as described in that paragraph, or for the second preceding year, as the Secretary finds appropriate) aged 5 to 17, inclusive, in the school district of such agency in institutions for neglected and delinquent children (other than such

**(Footnote continued on the next page . . . )**

18

statute or regulation granting it a right of action under the IDEA. *See Lawrence Township Board of Education v. New Jersey*, 417 F.3d 368, 372 (3d Cir. 2005) (a local educational agency "has neither an express nor implied right of action under the IDEA."). Additionally, Section 2509.5 of the Public School Code[8] governs Commonwealth payments to school districts for the support of programs and services for exceptional children. As discussed above, there is an administrative remedy for West Mifflin to pursue regarding the calculation of payments it is to receive under the Public School Code.

West Mifflin's other claim is that the classification of students for a district's average daily membership in Section 1607(f) of the Public School Code violates the funding requirements of the IDEA. However, mandamus "is not a proper vehicle for challenging the constitutionality of a statute, regulation or policy." *Clark v. Beard*, 918 A.2d 155, 159 (Pa. Cmwlth. 2007). Mandamus is not used to establish legal rights but to compel the enforcement of established legal rights. We sustain the preliminary objections to Count III.

### Count IV – Breach of Contract
### (Against Duquesne and Dr. Long)

In Count IV, West Mifflin asserts that Duquesne has neither paid Steel Center for the costs of Duquesne students since the 2007-2008 school year nor reimbursed West Mifflin for its payment of such costs to Steel Center. West

---

**(continued . . . )**
> institutions operated by the United States), but not counted pursuant to subpart 1 of part D of this subchapter for the purposes of a grant to a State agency, or being supported in foster homes with public funds.

20 U.S.C. §6338(c)(1)(B). Clearly, Section 6338 is not applicable to Duquesne.

[8] Added by Section 18 of the Act of August 5, 1991, P.L. 219, 24 P.S. §25-2509.5.

Mifflin brings this claim "[t]o the extent that 24 P.S. §18-1809(c) indicates that a breach of contract action is the appropriate cause of action to recoup unpaid vocational-technical tuition." Petition for Review, ¶187. To establish a claim for breach of contract, a party must show: (1) the existence of a contract; (2) a breach of the duty imposed by the contract; and (3) damages resulting from such breach. *Sewer Authority of City of Scranton v. Pennsylvania Infrastructure Investment Authority of Commonwealth,* 81 A.3d 1031, 1041-42 (Pa. Cmwlth. 2013).

### a. Duquesne's preliminary objection

Duquesne responds that Count IV is legally insufficient because it participates in the Steel Center, which is a vocational and technical center. Therefore, Section 1809(c) of the Public School Code is inapplicable. Further, Duquesne contends that Count IV does not allege facts to show that it has a contractual obligation to pay West Mifflin and, in any case, Count IV is barred by the statute of limitations. We address these arguments *ad seriatim*.

As noted, the Public School Code provides that if a "school district neglects or refuses to pay for [vocational program] tuition, it shall be liable therefor, in an action of contract, to the school district" which the student attended. 24 P.S. §18-1809(c). It also provides that "any pupil residing in a nonparticipating district may attend the area vocational-technical school or technical institute. The school district in which the pupil resides shall be charged ...." 24 P.S. §18-1847.

Count IV alleges that Duquesne does not participate in an approved vocational program and, thus, Duquesne must pay the technical institutes where its students are enrolled. Assuming this fact to be true, Duquesne can be held liable

20

for breach of contract for the payment of tuition.[9] However, an assumpsit complaint must set forth all the elements of a breach of contract, and Count IV does not do so.[10] Accordingly, we sustain Duquesne's preliminary objection to Count IV.[11]

### b. Dr. Long's preliminary objection

Dr. Long contends that the Petition does not state a cause of action for breach of contract under Sections 1809 and 1847 of the Public School Code because Duquesne maintains a technical education program. However, the pleading does not support that factual assumption, and it must be assumed that Duquesne does not maintain an approved career and technical education program and does not participate in a vocational school.

In the alternative, Dr. Long argues that "[a]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" Commonwealth Respondents' Preliminary Objections ¶59 (citation omitted). Simply, Section 1809(c) of the Public School Code does not provide a cause of action against Dr. Long, who does not have a contract with West Mifflin. The breach of contract claim must be brought against Duquesne, not Dr. Long.

---

[9] West Mifflin does not assert the existence of any written contract, the terms of the contract, or when the written contract was in place.

[10] The Petition does not allege the existence of a contract or what duty imposed by the contract was breached.

[11] Because we grant Duquesne's preliminary objection, we need not address its argument regarding the statute of limitations.

21

We agree and sustain Dr. Long's preliminary objection to Count IV.

## Count V – Unjust Enrichment
### (Against Duquesne and Dr. Long)

West Mifflin asserts an unjust enrichment claim against Duquesne and Dr. Long for: (1) the Title I, Part A and federal and state special education funds received and unjustly retained by Duquesne; (2) the amount of unreimbursed costs of transportation of Duquesne students incurred by West Mifflin; and (3) the tuition, costs and fees incurred by West Mifflin for the attendance of Duquesne's reassigned students to the Steel Center, dating back to the 2007-2008 school year.

Duquesne contends that these allegations do not state a cause of action for unjust enrichment because no benefit was conferred upon Duquesne. Duquesne students are educated by West Mifflin pursuant to a statutory scheme, and there is no allegation that Duquesne acted wrongfully, which is necessary to be "unjustly enriched." Duquesne complied with the statute by paying the tuition rate established by the Secretary. There is no allegation to show how Dr. Long unjustly benefitted by complying with the statute.

"Unjust [e]nrichment is an equitable doctrine." *Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc.,* 885 A.2d 1127, 1137 (Pa. Cmwlth. 2005). The doctrine will imply a contract where a party has been unfairly benefited by another's action. *Id.* "The elements of unjust enrichment are 'benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) (citations omitted).

Federal and state special education funds are paid to Duquesne for its students. West Mifflin concedes that the issue "is not with[] Duquesne's application for those funds, but rather in the fact that [it] retained those funds instead of turning that portion of the funds over to West Mifflin reflective of the Duquesne residents that were being educated in West Mifflin schools." West Mifflin Brief at 37. Further, West Mifflin concedes that Duquesne "began turning over those funds to West Mifflin in the 2014-2015 school year," albeit only for students in grades 7 to 8. *Id.* at 38.

Further, Count V states that West Mifflin transports Duquesne's students to high school, middle school, special education placements, Steel Center, and other locations, but the transportation subsidies do not cover its actual costs. Petition for Review, ¶¶100-106. In effect, West Mifflin challenges the statutory transportation funding provisions in the Public School Code, but unjust enrichment is not the vehicle to challenge the validity of a statute. Accordingly, we sustain the preliminary objections of Duquesne and Dr. Long to Count V.

### Count VI – Mandamus to Establish Education Advisory Committee (Against all Respondents)[12]

Count VI challenges the Secretary's failure to establish the Education Advisory Committee as required in Section 1607(i) of the Public School Code, 24 P.S. §16-1607(i).[13] Specifically, Count VI alleges that the Committee has not met

---

[12] Commonwealth Respondents did not file preliminary objections to this Count.

[13] It states:

The following apply:

**(Footnote continued on the next page . . . )**

23

or adhered to the semi-annual reporting and written response requirements. Duquesne's preliminary objections assert that it has nothing to do with the functions of the Education Advisory Committee. West Mifflin agrees that Count

---

**(continued . . . )**

(1)   No later than ninety (90) days after designating a school district under subsection (b)(1), the secretary shall establish the Education Advisory Committee, consisting of members selected by the secretary, including:

(i)   A representative of each school district designated under subsection (b)(1) recommended by the board of school directors of the designated school district.

(ii)   A member of the board of control of the distressed school district subject to this section.

(iii)   An administrator from each school district designated under subsection (b)(1) and from the distressed school district subject to this section.

(iv)   A teacher from each school district designated under subsection (b)(1) and from the distressed school district subject to this section.

(v)   An elected official representing voters in each school district designated under subsection (b)(1) and the distressed school district subject to this section.

(vi)   Three (3) residents of each of the school districts designated under subsection (b)(1).

(vii)   Three (3) residents of the distressed school district subject to this section.

(viii)   An employe of the department. The employe must not be a current member of the board of control.

(ix)   A representative of the intermediate unit in which the school districts designated under subsection (b)(1) and the distressed school district subject to this section are located.

(2)   The Education Advisory Committee shall provide a semi-annual report to the secretary. The report shall include:

(i)   An evaluation of the transition of students who have been assigned to a school district designated under subsection (b)(1).

(ii)   Recommendations for changes to the process established under subsection (b)(2).

(iii)   Recommendations for improving education opportunities for students of a distressed school district under this section.

(3)   The secretary shall provide the Education Advisory Committee a written response to the semi-annual report required under paragraph (2).

24 P.S. §16-1607(i).

VI is directed against the Department and the Secretary and that Duquesne was added mistakenly. Accordingly, we dismiss Duquesne from Count VI of the Petition.

## All Counts - Demurrer- Sovereign Immunity

### a. Dr. Long

Dr. Long objects to West Mifflin's Petition in its entirety, asserting each of the claims against him are barred by sovereign immunity. Under Section 671-A of the Public School Code,[14] a receiver is not "personally liable for any obligations of the school district[,]" and is "entitled to sovereign and official immunity as provided in 1 Pa. C.S. §2310 (relating to sovereign immunity reaffirmed; specific waiver) and shall remain immune from suit except as provided by and subject to the provisions of 42 Pa.C.S. Ch. 85 Subchs. A (relating to general provisions) and B (relating to actions against Commonwealth parties)." 24 P.S. §6-671-A(i). West Mifflin does not, and cannot, point to a statute that has waived Dr. Long's sovereign immunity in this regard. Accordingly, Dr. Long is entitled to be dismissed from the proceeding by reason of sovereign immunity.[15]

---

[14] Added by Section 10 of the Act of July 12, 2012, P.L. 1142.

[15] Because we have determined to dismiss Dr. Long from the proceeding, the Commonwealth Respondents' Application to Remove Party and Amend Caption is dismissed, in part, as moot, with regard to Dr. Paul Long. With regard to the remainder of the Application, which seeks to remove the Secretary of Education, we deny the Application. Count VI of the Complaint is an action in mandamus against the Secretary Education and PDE to obtain an order requiring the Secretary to perform his statutory duties. West Mifflin contends that the Secretary has not convened and/or continued the education advisory committee as required by Section 1607(i) of the Public School Code, 24 P.S. §16-1607(i).

### b.  Department of Education and the Secretary

Likewise, the Department and the Secretary object to each count on grounds of sovereign immunity.  Generally, the Commonwealth and its agencies, officials and employees acting within the scope of their duties are immune from suits for damages.  1 Pa. C.S. §2310.  Moreover, "[d]amage suits will be barred unless the plaintiff establishes that the cause of action falls under one of the specifically enumerated legislative exceptions to immunity."  *Stackhouse v. Pennsylvania State Police*, 892 A.2d 54, 59 (Pa. Cmwlth. 2006).

Sovereign immunity is an affirmative defense which should be raised as new matter.  However, this Court has recognized limited exceptions to this rule:

> First, a party may raise the affirmative defense of immunity as a preliminary objection where it is clearly applicable on the face of the complaint; that is, that a cause of action is made against a governmental body and it is apparent on the face of the pleading that the cause of action does not fall within any of the exceptions to governmental immunity. Second, where a party erroneously asserts an immunity defense in a preliminary objection, the failure of the opposing party to file a preliminary objection to the defective preliminary objection in the nature of a motion to strike for lack of conformity to law waives the procedural defect and allows the trial court to rule on the immunity defense.

*Orange Stones Co. v. City of Reading,* 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014) (citations omitted).

In this case, the affirmative defense of sovereign immunity is not clearly applicable from the face of the Petition.  Accordingly, the Department and the Secretary should raise sovereign immunity as a defense in their new matter.

## Conclusion

For the reasons stated above, all counts against Duquesne and Dr. Long are dismissed. Counts I and II are transferred to the Department of Education for a hearing and adjudication on the adequacy of the tuition rates paid to West Mifflin to educate Duquesne students. *See* 42 Pa. C.S. §5103(a).[16] We sustain the demurrer to Counts III, IV and V because they do not state a claim.[17]

_____

MARY HANNAH LEAVITT, President Judge

---

[16] Section 5103(a) of the Judicial Code allows a court to transfer erroneously filed appeals or other matters to "the proper tribunal." 42 Pa. C.S. §5103(a). "Tribunal" is defined as:

> a court or magisterial district judge or other judicial officer of this Commonwealth vested with the power to enter an order in a matter, the Board of Claims, the Board of Property, the Office of Administrator for Arbitration Panels for Health Care and any other similar agency.

42 Pa. C.S. §5103(d). In determining whether a particular entity is a tribunal for purposes of Section 5103(d), "the relevant inquiries are whether the entity is a commonwealth agency with statewide jurisdiction … and whether the entity exercises jurisdiction involving subject matters which are, in other instances, within the original jurisdiction of the courts." *Meck v. Carlisle Area School District*, 625 A.2d 203, 206 (Pa. Cmwlth. 1993). The Secretary of Education has been found to be a tribunal for purposes of Section 5103(d) for matters relating to teacher demotions. *See Kemp v. City of Pittsburgh Public School District*, 933 A.2d 130 (Pa. Cmwlth. 2007) (affirming court of common pleas transfer of case to Secretary of Education, who has exclusive jurisdiction to hear appeal of board of education decision upholding recommended demotion); *Meck*, 625 A.2d at 206 (district's conduct constituted a demotion, which was appealable to the Secretary of Education rather than court of common pleas; trial court should have transferred case to Secretary of Education upon determining it lacked jurisdiction over appeal).

The Secretary of Education is a tribunal under Section 5103(d) for appeals related to public school funding. First, the Secretary of Education has statewide jurisdiction. Second, the Secretary would be exercising jurisdiction over a matter under the Public School Code, which is a subject matter within the original jurisdiction of either a court of common pleas or this Court. Accordingly, a transfer is appropriate.

[17] Finally, we deny Petitioners' Application to Strike Portions of the Reply Brief filed by the Commonwealth Respondents.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Mifflin Area School District;   :
and Phil Shar, Resident and   :
Taxpayer of the West Mifflin   :
Area School District,   :
        Petitioners   :
  :
        v.   :   No. 314 M.D. 2016
  :
Pedro A. Rivera, Secretary of   :
Education of the Commonwealth   :
of Pennsylvania; the Pennsylvania   :
Department of Education;   :
Duquesne City School District;   :
and Paul B. Long, Receiver for   :
Duquesne City School District,   :
        Respondents   :

# **O R D E R**

AND NOW, this 17th day of January, 2017, we SUSTAIN the preliminary objections of Duquesne City School District and Dr. Paul Long; all counts of the Petition are DISMISSED as to them. We DISMISS Counts I and II of the Petition for lack of jurisdiction and TRANSFER those counts to the Department of Education for an administrative hearing and adjudication. We SUSTAIN the preliminary objections of Pedro A. Rivera, Secretary of Education, and of the Department of Education to Counts III, IV, and V of the Petition. The Court RETAINS jurisdiction over Count VI.

Petitioners' Application to Strike Portions of the Reply Brief filed by certain Respondents is DENIED.

_____
MARY HANNAH LEAVITT, President Judge